Okay, the next argued case is number 18, 1773, Henry Houston, Mr. Coles. If it pleases the court, your honors, the board affirmed an anticipation of rejection based on the reference of Thacker. So the ultimate question here seems to be, is there substantial evidence in the record that supports the anticipation of rejection? If I can just briefly let me touch on what I consider to be the relevant portions of the leachate, where the leachate contains suspended solids. The idea is to auralize the leachate and the suspended solids and to send them over a solid collection area where the suspended solids fall out onto the solid collection area. Now that pertains to claims 8 and 15. Claim 18 says that the solids collection area is the landfill. So what you're relying on, it seems to me, almost entirely the idea that Thacker discloses one micron particles. But in fact, if we were to read Thacker as disclosing larger particles, why wouldn't that be a problem for your argument? What Thacker does, he takes out all of the particles that are one micron and above. So... No, because the claims of Thacker contemplate performing only the first step without getting to the filtration step. The two steps in Thacker. And if you look at the claims in Thacker, some of the dependent claims made clear that Thacker is addressing also a situation in which particles are greater than one micron. Isn't that correct? Your Honor, I don't see that in Thacker. What I see in Thacker is that they have one micron of filters that filter all of the suspended solids. That's true. That's one embodiment. But Thacker also involves situations where that filtration step is left out. It discloses a system in which there's no filtration step. That's part of the claims. Your Honor, I think it's possible to draft a broad claim that is not supported. But in terms of the basic teachings of Thacker, it seems to me, and to my client, the idea is that the suspended solids have to be removed. And they remove all of them down to one micron. If you look at page 301 of the appendix, claim three of Thacker covers a situation in which the solids are greater than about one micron. So if that's the dependent claim, the independent claim must be broader in which that step isn't performed. I'm sorry, Your Honor. 301. It's which claim, three? Three. And then claim two is a dependent claim where the second step, that is the sand filter, is performed, suggesting again that the first claim is broader than that and doesn't require performance of the second step. If I read claim three, it says where the raw leachate is filtered to remove all suspended solids having an average diameter of greater than one micron. Right, that's correct. So if that's the dependent claim, the independent claim must include something in which that additional step doesn't take place. Your Honor, for an anticipation analysis, I'm not familiar with authority that can look at the scope of a claim and if the scope is broader than what the reference discloses, use that in an anticipation analysis. I'm just not familiar with that. But in any event, there are some claim construction issues in this case. And one of the claim construction issues is what is a solid conglomeration area. That term was effectively defined and construed in the original prosecution where it said it's a designated area. In other words, it's a marked area or assigned area. And the board also construed I will say this requires particular material to be suspended in air and directed to a particular location. It seems to me that the director's position and the position of the board is that there was a modeling exercise in Thacker where they modeled it. And they said at 45 meters out from the atomizers that this is safe in terms of air pollution. I think in terms of the safety official sent by the WHO, it says it was safe. And it's based on this that it appears that the examiner and the board construed that to mean that that would be substantial evidence that there are suspended solids aerosolized in the Thacker and directed to a designated solids conglomeration area. And I believe that there is a huge gap between that. I do not believe that's relevant evidence of delivering suspended solids to a solids conglomeration area. I think it's based on speculation and assumption. I'd like to tell you why I believe that. It is clear there was a issue of really what constitutes a suspended solid. And the examiners were able to convince the board that suspended solids could go down to 0.7 microns. So if we are correct and Thacker is removing one micron solids and all about that, then the only thing that is left that could possibly be a suspended solid is those that are 0.7 micron up to one, if that is right. And for the anticipation argument to stick and have traction, it seems to me that you have to assume. You have to assume that there were, in fact, suspended solids that small that reached the atomizer. I don't think that you can assume that. It looks like that my time is up. I'd like to reserve some time for rebuttal. There's no questions? No, not at the moment. All right, we'll save the rest of your time. Ms. Silfen. Thank you. May it please the court. The issues in this case boil down to one dispute, which is where is Thacker's spray going? And that question is answered in Thacker's figure one, which indicates that the things inside the bottom outlined box are safe. It's not true that there's just one question. There's the question of whether on their assumption that Thacker only discloses particles below one micron, which I'm skeptical about, as to whether that those particles would out in this area. They rely on this barren chart to suggest that they wouldn't. And they're saying that the board couldn't make a finding that it did in the light of the barren evidence, I guess. Well, it still comes down to where the spray is going, right? Whether the solids are settling out in a designated area. And they're saying that they wouldn't settle out because they're too small. Right. And in addition to what you mentioned, Judge Dyke, there's also this problem that the spray that's coming out is not these dry particles. It's droplets that are bigger than the solids that are encased in them. So the bigger droplets don't necessarily follow the same principle that a one micron sized particle would follow in terms of whether it can fall. Excuse me? They would settle out sooner. That's right. That's right. So it's not that this evidence that says that it might float for days if it were one micron means that these droplets might float for days. But on top of that, the outside of a certain area, the air is clean and there aren't a lot of particles floating around. And it makes sense that you would want your spraying water that is contaminated into the air. You would want it to be sprayed over a landfill, not a neighborhood or park or something. And if the court doesn't have any other questions, I'm happy to answer any questions for myself. No questions. Okay. Thank you, Ms. Silken. Thank you. Mr. Coates. Thank you, Your Honors. It is clear that the director didn't have any quorums with our claim construction. But the problem here is that when they talk about the particle suspension for 45 millimeters from the atomizers, that doesn't tell us anything about what's in the air. That doesn't tell us what size you are, what is the concentration. It doesn't even tell us what the threshold level is, you know. So I'm urging that that cannot be a basis for taking that and concluding that Thacker does what our claims call for. Taking suspended solids in a waste water or legit aerosolism and directed them to a designated solids collection area. Now, let me turn a second to this question about the landfill. To the landfill, you know, this is a schematic drawing. It does not purport to give the landscape or the environment. To the landfill has an error drawn from the back filters, which is a residue. And that's the only thing in figure one that's going to the landfill. Well, except that the leachate itself is at the landfill. So the processing of the leachate probably is occurring at the landfill, right? Yes, the leachate is occurring at the landfill and then it's put in the leachate pond. In an air client, it is put from the leachate pond over to a container of potato leachate where it's sprayed over the solids collection area. In Thacker, Thacker's atomizers serve one purpose. They're to evaporate that leachate. There would be no reason to put the atomizers on the landfill. They could be anywhere because the idea is to evaporate. And one of the arguments made in the director's brief was that if the air quality is safe, that must mean that the suspended solids have fallen out. Respectfully, that's wrong. What that means is that there were no suspended solids entered into the air. You know, it doesn't mean that they were falling out. Thacker never talks about suspended solids falling out. Never. Not one time. The other important point here is even the board didn't have great confidence in relying on figure one. They dropped back and argued that a person of ordinary skill and art would have an understanding that the Thacker atomizers would be placed on a landfill. And by the way, the board said, and the reason for doing that is that would assure that the adjoining land is not contaminated. Your honors, that's an obviousness case. That can't be anticipation. And the other point is, and even the board was uncomfortable in relying on that. And they said, by the way, in Thacker, they talk about a prior art process where you irrigate over the landfill and re-inject. And what they said is that a person of ordinary skill and the art, knowing that particular prior art, would envision these. Now we get into those envision cases of chemo metal, not a motor, that they could envision our client's claim invention. Again, you cannot write a limitation out of the claim by saying it can be envisioned by a person of ordinary skill if the grounds is anticipation. This is an anticipation case, and I respectfully urge that the patent claims of this case are not anticipated. Okay, thank you. Thank you both. The case is taken under submission, and that concludes our argued cases for this morning.